UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN LOPEZ,

        Plaintiff,

   v.

PAUL CHAPPIUS, JR., et al.,

        Defendant.

_____

**DECISION AND ORDER**

6:17-CV-06305 EAW

## BACKGROUND

Plaintiff John Lopez ("Plaintiff"), proceeding *pro se*, is a state prisoner currently housed at the Green Haven Correctional Facility. The operative pleading is the amended complaint, which alleges a claim under 42 U.S.C. § 1983 for First Amendment violations based on the failure to provide Plaintiff with seventeen Rastafarian Holy Feast Day Meals while confined in the Involuntary Protective Custody Unit at the Elmira Correctional Facility ("Elmira"), between June 5, 2012, and March 31, 2015. (Dkt. 8 at ¶¶ 12, 39). Plaintiff has asserted this claim against four defendants: Paul Chappius, Jr., identified as the Elmira Superintendent ("Chappius"); John Mizgala, identified as Deputy Superintendent of Programs ("Mizgala"); Frank Rhodes, identified as Assistant Deputy Superintendent of Programs ("Rhodes"); and T. Hawk, identified as Religious Coordinating Chaplain ("Hawk") (collectively "Defendants"). (Dkt. 8 at ¶¶ 5-8). Plaintiff alleges that Hawk was "in charge of facilitating preparing making the preparations of the celebration list for the religious holy feasts events," (*id*. at ¶ 40), and that he "failed to

- 1 -

provide Plaintiff Mr. Lopez with his religious holy feasts which consist of Seventeen holy celebration feasts," (*id*. at ¶ 43).   Plaintiff's allegations with respect to the remaining defendants essentially consist of claims that he made them aware of the alleged deprivations through correspondence and grievances and they failed to remedy the situation.   (*See* Dkt. 8 at ¶¶ 15, 18, 58, 59, 64 (allegations regarding Mizgala); ¶¶ 16, 21, 22, 24, 25, 32, 41, 75 (allegations regarding Chappius); ¶¶ 20, 54, 68, 69, 70, 71, 72 (allegations regarding Rhodes)).

Currently pending before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants.  (Dkt. 13).  Plaintiff has submitted papers in opposition to the motion.  (Dkt. 18).  For the reasons set forth below, Defendants' motion is denied.

## DISCUSSION

It is well-established in the Second Circuit that "deny[ing] prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."  *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004). Thus, "a prisoner has a right to a diet consistent with his or her religious scruples."  *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003).  Here, Plaintiff plainly alleges that Hawk was "in charge of facilitating preparing making the preparations of the celebration list for the religious holy feasts events," (Dkt. 8 at ¶ 40), and that he "failed to provide Plaintiff Mr. Lopez with his religious holy feasts which consist of Seventeen holy celebration feasts," (*id*. at ¶ 43).  Plaintiff attaches to his amended complaint letters written to Hawk

complaining about the failure to provide religious meals, spanning a one year time period from October 2013 through October 2014. (Dkt. 8-1 at 2-4, 13, 17-18).

Notwithstanding these allegations, Defendants argue that Hawk is not responsible for the alleged failure to provide Plaintiff meals because Plaintiff failed to correctly request that he be placed on a list for such meals. Defendants contend that this Court should take judicial notice pursuant to Federal Rule of Evidence 201 of the fact that "for inmates in New York State prisons to receive a religious meal, they must request to be on a list submitted by the chaplain," (Dkt. 13-1 at 3), and Defendants further rely on factual findings reached in connection with various grievances filed by Plaintiff (*id.* at 6-7).

If the Court were to take judicial notice as urged by Defendants, it would constitute reversible error. The basis for Defendants' judicial notice request is their reliance on evidence introduced in three entirely different cases either at trial or on a summary judgment motion. (*Id.* at 3). Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). On a Rule 12(b)(6) motion, a court "may consider materials subject to judicial notice, including court filings in other litigation, 'not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings.'" *Riddle v. PepsiCo, Inc.*, 440 F. Supp. 3d 358, 362 (S.D.N.Y. 2020) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). Here, Defendants want the Court to take judicial notice of factual findings made in different lawsuits—this is not within the proper scope of judicial notice. *See Weisshaus v. Port Auth.*

*of New York & New Jersey*, 814 F. App'x 643, 647 (2d Cir. 2020) (reversing district court's grant of Rule 12(b)(6) motion based on judicial notice of factual findings from another lawsuit), *cert. denied sub nom. Weisshaus v. Port Auth. of NY & NJ*, No. 20-571, 2021 WL 78150 (U.S. Jan. 11, 2021).  "Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).  Thus, the Court rejects Defendants' request for the Court to take judicial notice of facts determined in other litigation.

Turning to Defendants' argument that, in essence, the Court should ignore Plaintiff's allegations that Hawk deprived him of his religious meals and instead credit the factual determinations of personnel with the Department of Corrections and Community Supervision ("DOCCS") in resolving Plaintiff's various grievances, this is an entirely inappropriate request on a Rule 12(b)(6) motion.  On this motion, the Court must accept "all factual allegations [in the amended complaint] as true and draw[] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  Crediting the factual determinations made by DOCCS employees would fly in the face of those principles.  At the motion to dismiss stage, the Court "must assume the truth of the plaintiff's allegations and avoid resolving factual disputes."  *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020); *see Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (on a motion to dismiss, "the court's task is to

assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side.").

Defendants also ask that the claims against Chappius, Mizgala, and Rhodes be dismissed because they cannot be liable under a theory of *respondeat superior* for Hawk's alleged misconduct.  (Dkt. 13-1 at 7-9.)  It is true that to establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  The Second Circuit has recently clarified that "there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Even before *Tangreti*, it was "well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find that the defendant was personally involved in the deprivation alleged," *Rodriguez v. Rock*, No. 9:13-CV-01106 DNH, 2015 WL 5147045, at *6 (N.D.N.Y. Sept. 1.2015) (collecting cases), and "the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement" of a supervisor in the denial of a constitutional right, *Perrilla v. Fischer*, No. 13-CV-0398M, 2013 WL 5798557, at *7 (W.D.N.Y. Oct. 28, 2013).  Thus, the Court agrees with Defendants that to the extent Plaintiff attempts to base his claims of liability

against Chappius, Mizgala, or Rhodes, on their mere supervision of Hawk or their mere receipt of communications from Plaintiff, that is not enough. However, construing Plaintiff's amended complaint liberally, as the Court must due to his *pro se* status, *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001), Plaintiff alleges more than just *respondeat theory* liability against these supervisory defendants.

Plaintiff alleges that both Mizgala and Rhodes had the responsibility to oversee all programs at Elmira (Dkt. 8 at ¶¶ 6, 7), that he complained to Mizgala in October 2013 and May 2014 of being deprived of his religious meals (*id.* at ¶¶ 15, 18), and that he similarly complained to Chappius on July 24, 2013 (*id.* at ¶ 16). Plaintiff attaches to his amended complaint letters written to Mizgala in October 2013, and May 4, 2014, complaining that he had been deprived of his religious meals (Dkt. 8-1 at 6-8, 15); a letter written to Chappius with similar complaints on July 24, 2013 (*id.* at 10-11); and a letter to Rhodes dated October 29, 2014, informing him of an upcoming Holy Feast Day on November 2, 2014 (*id.* at 20). Plaintiff's exhibits further contain an allegation that he was "interviewed" by Mizgala in October 2013 and that Mizgala assured him that he would be provided with a religious meal on an upcoming Holy Feast Day, but this did not occur. (*Id.* at 33-34).

The clear import of these allegations is that Plaintiff continually attempted to be provided with his Holy Feast Day meals by, among other things, engaging in a letter-writing campaign to those who served in positions where they would have the power to provide him his requested relief, but over the course of almost three years, he was consistently not provided his religious meals. Further, Plaintiff has plausibly alleged that the supervisory defendants in this case were personally aware of his complaints, but that

the failure to accommodate Plaintiff's religious practice continued unabated.  The Court

concludes that this is sufficient to allege personal involvement of these supervisory

defendants so that Plaintiff's claims may proceed.  *See Brandon v. Kinter*, 938 F.3d 21, 37

(2d Cir. 2019) (finding supervisory defendants could potentially be held liable for

continued inclusion of pork in Muslim inmate's meals, in violation of his free exercise

rights, where those defendants were direct recipients of his complaints and yet he

"continued to be served meals containing pork").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 13) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

DATED:     March 8, 2021
           Rochester, New York